**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| QUIANNA AUSTIN, | : | |
| o/b/o ALIZAI AUSTIN | : | |
| | : | |
| Claimant, | : | |
| | : | |
| v. | : | CASE NO. 4:09-CV-88 (CDL) |
| | : | Social Security Appeal |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Respondent. | : | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

On June 11, 2008, the Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, found that Claimant, a minor child, had experienced medical improvement as of April 1, 2004, and was no longer entitled to Social Security benefits. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted. This Supplemental Report and Recommendation preempts and replaces the Report and Recommendation filed on November 23, 2009.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.* The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir. 1973) (per curiam). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).

In a case where a child claimant is seeking entitlement to Title XVI benefits, the following definition of disability applies:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). Therefore, eligibility depends upon the presence of "marked and severe functional limitations." A sequential evaluation process is used to determine if the child meets the statutory definition of disability. 20 C.F.R. § 416.924, *et seq.* Step one requires the ALJ to determine whether the child is engaging in substantial gainful activity. If so, then the claim is denied. Step two requires that the ALJ determine whether or not the child has a severe impairment or combination of impairments, defined as more than a slight abnormality and causing more than minimal functional limitations. If not, then the claim is denied.

Step three requires the ALJ to decide whether the impairment is medically or functionally equivalent to impairments described in the listings of the regulations. To assess functional equivalence to a listed impairment, the ALJ must evaluate the level of the claimant child's ability to function in six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If the child has "marked" limitations in two domains, or an "extreme" limitation in one domain, the child's impairment is the functional equivalent of the impairments listed in the Federal Regulations. 20 C.F.R. § 416.926a(a). A limitation is "marked" when the child's impairment or impairments seriously interfere with his ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). When measured by standardized testing, a marked limitation is generally indicated by scores "at

least two, but less than three, standard deviations below the mean." *Id.* An "extreme" limitation causes very serious interference with the child's ability to independently initiate, sustain or complete activities and is usually associated with standardized test "scores that are at least three standard deviations below the mean." *Id.* § 416.926a(e)(3)(I).

A similar three-step process is used to evaluate whether a child claimant has experienced medical improvement such that he is no longer entitled to receive benefits. "[I]f [a claimant is] entitled to disability benefits as a disabled child, [his] continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. § 416.994a. Section 416.994a, which regulates supplemental security income applications, provides the factors which must be considered in order to effect a valid cessation of Claimant's benefits. First, the ALJ must ascertain whether there has been any medical improvement by the Claimant. 20 C.F.R. § 416.994a(1). If Claimant's disability has not medically improved, the ALJ must consider the exceptions[2] to any medical improvement and whether one or more of these exceptions applies. *Id.* Where no medical improvement is found, the Plaintiff's benefits would continue. *Id.* If medical improvement as defined in 20 C.F.R. § 416.994a(c) exists, the ALJ moves to step two and determines whether Claimant's impairment "meets or medically or functionally equals the severity of the listing it met or equaled [before]." 20 C.F.R. § 416.994a(a)(1). If so, the ALJ must find Claimant still disabled unless one of the exceptions exists. If not, the ALJ moves to the final step and determines whether Claimant is currently

---

[2] The exceptions are found in 20 C.F.R. § 416.994a(e)-(f).

4

disabled under 20 C.F.R. § 416.924(c) and (d).  20 C.F.R. § 416.994a(b)(3).

## ISSUES

I.   **Did the ALJ properly advise Claimant of her right to counsel and fully and fairly developed the record?**

II.  **Did the ALJ err by failing to evaluate Claimant's impairment under Listing 112.05D?**

III. **Is the ALJ's finding that Claimant had limitations in only one functional domain supported by substantial evidence?**

## Administrative Proceedings

Claimant was initially found to be disabled on October 1, 1996. (T. 38, 52.) On May 15, 2000, her disability was continued. (T. 38, 53.) However, on April 15, 2004, the Commissioner determined that Claimant had experienced medical improvement as of April 1, 2004, and was no longer disabled. (T. 38, 54-56, 60-64.) Claimant moved for reconsideration, which was denied. After two hearings, on June 11, 2008, the ALJ issued a decision affirming the decision to cease disability benefits as of April 1, 2004. (T. 35-51.) The Appeals Council denied Claimant's request for review, and this appeal followed. (T. 8-11.)

## Statement of Facts and Evidence

Claimant Alizai Austin was born on February 14, 1996, and was found to be disabled, with the impairment of mental retardation, before her first birthday. (T. 84, 52.) Claimant's right to receive Supplemental Security Income benefits was reviewed on May 15, 2000. (T. 53.) At that time, it was determined that Claimant had a continuing disability and was still

entitled to benefits for her impairment of mental retardation. (T. 53.) In April 2004, the Social Security Administration again reviewed Claimant's file, and at that time determined that Claimant had had medical improvement such that she was no longer entitled to benefits. (T. 54-64.) Claimant appealed the decision to discontinue benefits and the ALJ held hearings on February 13, 2007 (T. 412-18) and April 21, 2008 (T. 419-31). At both of these hearings, Claimant's mother was present, although Claimant was not present at the second hearing. (T. 421.) Claimant was not represented by counsel at either hearing. (T. 412-18, 419-31.)

At the first hearing, on February 13, 2007, a medical expert was present. (T. 415.) This medical expert, Dr. Francis Buda, noted that, at the time, he did not have sufficient information in Claimant's file upon which to base opinions. (T. 415.) The ALJ then explained to Claimant's mother that the ALJ would update Claimant's file so that "Dr. Buda will have access to all that information so any opinions he has regarding the, whether or not your daughter continues to be disabled will be based on current medical records." (T. 415-16.) When Claimant's mother attempted to ask the ALJ questions, the ALJ cut her off and explained that someone from his office would be contacting her to update the Claimant's file, but that there was no reason to go into the merits of the case. (T. 416-17.) No mention was made at the first hearing of Claimant's lack of or right to legal representation. (T. 412-18.)

The second hearing before the ALJ was held on April 21, 2008. Claimant was not present at this hearing because the Claimant's mother was unaware that Claimant should have been present. (T. 421-23.) At the hearing the ALJ explained that he typically "require[s] the child to be present . . . because [he] want[s] to see the child and ask the child

6

questions." (T. 421.) Since Claimant's case had been pending for a long time, however, the ALJ proceeding with the hearing and made his decision based upon the responses the Claimant's mother gave to the ALJ's questions. (*Id.*)

Claimant was not represented by counsel at the hearing. When addressing this issue, the following dialogue occurred between the ALJ and the Claimant's mother:

| | |
|---|---|
| ALJ: | Now you are not represented, you do understand you have a right to a representative do you not? |
| Witness: | Yes. |
| ALJ: | Okay. And so since you were not represented before at the previous hearing and I believe I did explain that to you, I'm going to proceed today and hold the hearing noting that, I'm assuming that you do not want to be represented, is that correct? |
| Witness: | Yes |

(T. 421-22.) The Claimant's mother also expressed concern at the hearing that she had not received copies of some of the documents that were included in the record of the case. (T. 423-25.) Claimant's mother, however, did not object to the entire record being introduced into evidence by the ALJ. (T. 425.) Although Claimant argues that she has multiple physical problems (R. 20 at 3-4), Claimant's mother did not identify these problems at the hearing. (T. 423.)

The ALJ thereafter determined that the medical evidence in Claimant's record supports that there was a decrease in the severity of her impairment between May 15, 2000 and April 1, 2004. (T. 42.) The ALJ further concluded, based on the opinions of two state medical consultants, that since April 1, 2004, the Claimant's impairment, while severe, does

7

not meet the criteria of any listed impairment in the regulations. (T. 43-44.) Finally, the ALJ concluded that the Claimant was no longer disabled as of April 1, 2004, and that Claimant has not become disabled again since that time. (T. 51.)

## DISCUSSION

**I.    Did the ALJ properly advise Claimant of her right to counsel and fully and fairly developed the record?**

Claimant first contends that the ALJ failed to obtain a proper waiver of her right to counsel and that the ALJ further failed to properly develop the record. "A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (internal quotation marks and citation omitted). Regardless of whether the plaintiff is represented, the ALJ has a duty to develop a full and fair record. *Brown*, 44 F.3d at 934. If there has been a waiver of right to counsel at the administrative hearing before the ALJ, the claimant must show clear prejudice or unfairness caused by the lack of counsel in order to prove that she was denied a full and fair hearing. *Kelley v. Heckle*, 761 F.2d 1538 (11th Cir. 1985). If a claimant's right to counsel at the administrative hearing has not been waived, the hearing examiner's obligation to develop a full and fair record rises to a special duty. This special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel. In carrying out this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Brown*, 44 F.3d at 934.

It is clear from the record that Claimant did not waive her right to counsel. When the

ALJ briefly discussed the right to a representative at the second hearing in 2008, he relied upon the belief that he had fully explained the right to counsel to Claimant's mother at the first hearing. (T. 421-22.) This belief was mistaken. In fact, the ALJ failed to mention the Claimant's lack of counsel at the first hearing. (T. 412-18.) The Eleventh Circuit has explained that, in order to be effective, notice must "properly apprise[] [the claimant] of his options concerning representation." *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982) (internal quotation marks and citation omitted). For example, notice must "inform the claimant fully as to the possibility of free counsel and limitations on attorney fees to 25% of any eventual award." *Id.* at 829. The ALJ's cursory mention of the "right to representation" does not establish that Claimant knew of her options concerning representation or that she knowingly waived those rights.[3]

Although Claimant has not waived her right to counsel, a showing of prejudice must be made before it will be determined that the Claimant's rights of due process were violated to such a degree that the case should be remanded to the commissioner for reconsideration and further development of the record. *Brown*, 44 F.3d at 935. This requires a showing that the ALJ did not have all of the relevant evidence before him in the record or that the ALJ did

---

[3] The Commissioner argues that Claimant was informed of her right to counsel through several notices mailed to Claimant. It is noteworthy that Claimant's mother clearly stated that she did not receive copies of some of the documents from the Social Security Administration. (T. 423-25.) In fact, Claimant's mother expressed concern that she had not been regularly in contact with the Social Security Office. (T. 424-25.) The Court, therefore, will not assume that Claimant received and/or understood the significance of the notices in this particular case.

9

not consider all of the evidence in the record in reaching his decision. *Kelley*, 761 F.2d at 1540.

Claimant contends that she was prejudiced in this case in several ways. First, Claimant argues that the hearing was too brief and failed to contain enough testimony about the minor child. Second, Claimant protests the holding of the hearing without Claimant's presence . Third, Claimant avers that she was prejudiced because there was no medical expert at the second hearing and her records were never reviewed by the medical expert. Fourth, Claimant contends that had she been represented by counsel, the record with regard to her physical impairments would have been further developed. Fifth, Claimant argues that the record relating to her functioning in domains other than acquiring and using information was not sufficiently analyzed. Finally, Claimant states that she was prejudiced because the ALJ failed to assess her impairments under Listing 112.05D.

The Court agrees that Claimant was prejudiced in this case. It is true that the hearing was very brief in this case. Further, the ALJ's questioning of the Claimant was superficial, at best, and failed to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Brown,* 44 F.3d at 934. There were inconsistencies in Claimant's mother's testimony that should have indicated to the ALJ that more questioning of the witness was necessary. For example, the ALJ asked the Claimant's mother if the Claimant has any ongoing physical problems which require the mother to take the Claimant to the doctor on a regular basis. Although the Claimant's mother responded "No," she then stated that "even though I don't have to constantly take her to the doctor, she still spits up a lot of

saliva." (T. 423.) The ALJ failed to sufficiently follow up on this answer and determine what physical problems the Claimant was still experiencing. The ALJ also failed to obtain the other known medical records. Additionally, the Court is troubled that (1) there was no medical expert at the second hearing, (2) the medical expert, specifically Dr. Buda, did not review Claimant's medical records despite the ALJ's assurances to Claimant that such a review would occur (T. 415-16.), and (3) the ALJ conducted the hearing without the Claimant being present and made his decision without interviewing the Claimant. The Court agrees that the Claimant was prejudiced by these actions.

In sum, the Court finds that the Claimant was not properly advised of her right to counsel; thus, the Claimant has not knowingly waived that right. As such, the ALJ's duty to develop a full and fair record became a special duty, requiring that the record to show that the Claimant was not prejudiced by the lack of waiver. After a thorough review of the record, it appears that the Claimant was prejudiced as discussed above. Therefore, it is recommended that this case be remanded to the ALJ for further review.

## II. The remaining issues—Issue II and Issue III.

Because remand of this case is recommended, the court does not have to consider whether the ALJ also erred in failing to evaluate Claimant's impairment under Listing 112.05D or whether the ALJ's finding that Claimant had limitations in only one functional domain supported by substantial evidence. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam); Social Security Regulation 96-7p. On remand, however, the ALJ should fully develop the record and address these issues.

## CONCLUSION

**WHEREFORE**, it is the recommendation to the United States District Judge that this case be **REMANDED**. Pursuant to 28 U.S.C. § 636(b)(1), the Commissioner may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

THIS the 8th day of September, 2010.

S/Stephen Hyles
UNITED STATES MAGISTRATE JUDGE

agh